315-0742 William O'Donnell and Marilyn O'Donnell, appellees, cross-appellants by Megan Preston v. Estate of James Rowley, Nancy Rowley, and Willow Tree Farms, appellants, cross-appellees, by Jean Francison and Fred Simpson. Counsel, you may proceed. Would you like to be approached?  Okay. Thank you. Justices of the Appellate Court, this case from a big picture perspective is about pleadings and a lawsuit that was maintained on the basis of allegations which were false from the beginning and objected to and disputed by the defendants from the inception of this case. When this case went all the way through and went to trial, no further evidence was produced. No additional information was provided beyond what had been provided by the defendants at the inception of the case when they filed their initial motion to dismiss. The plaintiffs made allegations that were patently false in their initial complaint with regard to having no knowledge and the terms of a transaction not having been disclosed. As the case progressed and motions to dismiss were brought, mild modifications were made to the phrasing used in the allegations in the complaint which I would submit to this court were materially incorrect and or misleading. If this court looks to the language contained in the plaintiff's first amended complaint, the plaintiffs, after having been confronted with documentation attached to our motion to dismiss, it demonstrated that there was an attorney involved in the transaction, that the attorney had disclosed the terms of the transaction in terms of the amount of the purchase price and that the proposal was that the transaction occur based upon a mortgage and a promissory note and instructed the parties, all the members of the LLC to sign and return that memorandum of action consenting to the transaction if they consented. The letter that Mr. White, the attorney, also indicated that the plaintiffs should, well all parties should seek independent counsel if they wish to do so because he represented all parties to the transaction. The defendants also presented the affidavit of Nancy Rowley in which she set forth all the details of the transaction. All of that was submitted, again, at the very inception of the case. They filed a complaint in February of 2013 and April of 2013, a motion to dismiss was filed. All that information was provided. When the defects in those pleadings were raised, the defendants, excuse me, the plaintiffs withdrew that complaint without any explanation, without any acknowledgement to the court that the allegations were false and then subsequently amended their complaint and stated that the memorandum, and this is paragraph 13 of the amended complaint, alleged that the memorandum of action only disclosed that the subject parcel would be sold for $235,000 and does not contain authorization for payment pursuant to a promissory note and mortgage. I would submit to the court that that allegation is not strictly accurate and it is affirmatively misleading. It ignores the express disclosure contained in Attorney White's letter of December of 2008. Furthermore, the amended complaint also alleged that Nancy Rowley owed a fiduciary duty to all the members of the LLC and particularly the O'Donnells based upon her status as a member of the corporation. That is directly contradicted by Illinois law and we've cited to the specific sections of the LLC Act in our briefs. That was an unreasonable allegation to make. We raised, again, the defects in these pleadings with respect to the legal defects and the factual inaccuracies in a second motion to dismiss. Now, the trial court, in ruling on our motion for sanctions, seems to have not closely scrutinized the amended complaint or not noticed that that language is not accurate. When the court was ruling on these motions, and I'm referring specifically to the motion for sanctions as well as our motion for directive findings, the court specifically indicated that the parties seemed to have no disagreement about whether or not the promissory note and mortgage aspect of the sale had been disclosed. In fact, the plaintiffs contested that all the way throughout the case through trial on the case and ultimately have continued to contest that in their response and reply and what amounts to a sole reply brief in these proceedings. While it was patently obvious to the court, given the nature of the evidence that was presented at trial, that this was a clear disclosure and the parties consented and knew about it, that was not the situation we were dealing with. And we had to investigate and garner evidence and present evidence that, in fact, that disclosure letter was received and the consents were sent in response to that disclosure letter. When we filed our second motion to dismiss, it was granted in full. Bear in mind that all of the allegations of the complaint, as it existed at the time of the amended complaint, were derived from the allegations of fraud and breach of fiduciary duty. At that point, the accounting was based upon the allegations of fraud and fiduciary duty and likewise the request for a constructive trust, which the trial court ultimately characterized as an action for rescission. All of that was based upon the allegations of fraud and breach of fiduciary duty and the trial court granted that motion in its entirety. At that point, the plaintiffs did not relent in their pursuit of this case. In fact, they added more allegations. In the face of evidence that there are allegations in their initial complaint that they never consented to a sale of the office parts of property owned by Willow Tree, they likewise made those same allegations with respect to Rowley Farms Ltd., which was a separate corporation owned by James, the decedent, and Marilyn in equal parts prior to a transaction that ultimately was shown to have been fully disclosed, to have been fully documented, and to have been fully consented to by Marilyn O'Donnell. At her discovery deposition, she admitted to having received the payment when confronted with the checks and all the documentation showing the amount of the assets and the distribution that was being made in terms of how much should be paid to Marilyn and the checks that totaled that amount. This wasn't flushed out at trial before Judge Jars, who is a floating judge and had not heard all of the procedural aspects and machinations that had gone on prior to the trial. He only presided over the trial and the motion for sanctions. This set of circumstances ultimately led the plaintiffs to voluntarily dismiss their claims with respect to Rowley Farms. The plaintiffs have attempted to rely upon that dismissal to a great extent. What is particularly troubling about that is if you look at the actual court order that was entered, and again that's cited in the record, the court order that was entered pursuant to their motion to voluntarily dismiss, which by the way was brought the day after the trial court had allowed the defendants to withdraw their first motion for sanctions and had acknowledged that there were grounds for it, but suggested that the defendants withdraw it and resubmit at the close of evidence. The order that was entered by the plaintiffs was for dismissal without prejudice with leave to reinstate. So they clearly reserved that right. So the dismissal of those claims that didn't come before the trial court, so the court wasn't fully apprised of what had happened in that arena, at least at the time of trial. With regard to Rowley? Rowley LTD. The court never addressed it in its opinion on denying sanctions, and I believe that's against the manifest weight of the evidence. We certainly submitted all the documentation, the discovery deposition of Marilyn O'Donnell, the documentation that was attached to that deposition, which was what I referred to earlier, checks, resolutions, etc., etc., that she acknowledged having received, signed, and negotiated in her discovery deposition. That wasn't addressed by the trial court and was a clear error. Likewise, the trial court, with respect to the motion for sanctions, applied the wrong standard for a sanctions motion. The court held that sanctions were not appropriate with respect to the amended complaint, the second amended complaint, and everything else that occurred because there was a genuine issue of the material fact that entitled them, the plaintiffs, to go to trial. That those genuine issues of material fact, there's some question as to whether or not there were genuine issues of material fact, in my opinion, nonetheless, that's not the standard to be applied. The standard to be applied is whether it was objectively reasonable to plead that these allegations that were false and had no legal basis, from the inception of the lawsuit through the end, there was no evidence of damages, period. And, in fact, if you look at the trial testimony of the attorney who structured this transaction, Andrew White, he represented the LLC and was required to structure the transaction such that the promissory note and mortgage that the LLC received were worth at least as much as the property. That would be damages. The court, trial court, never addressed the issue of damages in its motion. You said it would be at least the amount or less than the amount? At least, at least. So the promissory note and mortgage could be worth more, but it could be worth no less. It had to be the same amount. That was the purpose of structuring. So you said, yeah, at least, okay. Yeah. So you're trying to say that there were no damages, per se. Correct. And that was evident from the beginning. If the plaintiffs had engaged in a reasonable manner... I mean, there could be structure of an argument that there would be damages on a 20 versus a 30-year note. There could be, yet there was never any attempt to prove that. I'm saying the record is void of that. It's not impossible to construct the damages argument or claim. Likewise, I would submit, Your Honor, that it's possible that if you ran those calculations, the 30-year might be worth more than the 20-year. Were there provisions for the payment of interest? Yes. The interest rate was set at the AFR. And the purpose behind the weight of the transaction, the structure, was in order to ensure that those were equal. The value would be very different over 30 years. Correct. It may be higher. Correct. You know, frankly, on my 30-year mortgage on my house, you don't get how much I end up paying. And in the end, it may very well have been worth more. You're a mortgager. We're not mortgages. But sometimes ready money is worth more. That's true. But there's no evidence in the record. It certainly wasn't presented. I'm saying that. I said it could be. You can't say point blank it can't. It could be structured to do damages. Not here. It wasn't. It could be. I agree. And this essentially comes full circle to where I believe one of the real indicia of bad faith, if you will, exists in this record. And that is Plano's counsel's attempt to submit her own calculations of damages in the motion for summary judgment. I frankly could not quite follow what the basis was. But it is not objectively reasonable for an attorney to attempt to provide evidence in the form of their own opinion testimony as to what damages are. That goes beyond the realm of what any attorney would objectively consider reasonable. And that's not the only defect that existed. Likewise, in terms of defect in reasoning that the trial court employed in the motion for sanctions, the trial court also engaged in an analysis of whether or not there was a material breach of contract when, in fact, the claim involved here was fraud, a material misrepresentation of fact. The elements are fairly basic. But I would submit that the court's misapplication of the standard for materiality in the context of a breach of contract action led the court down a pathway that misdirected the court. And it did not ultimately lead the court to engage in what I would consider to be the appropriate analysis based on the law. A lot of the language in case law with respect to material breaches and material misrepresentation appears similar. But when you drill down in a material misrepresentation, you look at what is that misrepresentation of fact. And there are sub-elements that are involved. Was it a misrepresentation of a material fact? Was it factual in nature? And because the court analyzed the case in the context of a material breach of contract, when that wasn't really the issue that was involved, the court didn't really analyze whether or not the statement contained in Mr. White's disclosure letter in December of 2008 that the Rowleys proposed to purchase the property for $235,000 using a promissory note in mortgage payable over a period of years, possibly 20. So that analysis would demonstrate that possibly 20 is no factual representation at all. It's a speculation. It's a proposed possibility and nothing more. And therefore, the court, if it employed the proper standard, would have been able to determine that there was no material misrepresentation that had been made. There's some other indications in the record that there was bad faith or vexatious motivation behind this litigation. And I would submit that the linchpin to that is the testimony, deposition testimony, of William O'Donnell. When we brought a 237 notice for Mr. O'Donnell to appear at trial, we've heard for the first time that he couldn't appear at trial. They brought a motion seeking to excuse his testimony at trial. And in the hearing on that motion- As for the medical reasons. Correct. Based on medical reasons, which were, in essence, the same issues that had existed at the time that they were asking, previously petitioned for the discovery deposition to have been taken telephonically, they never disclosed to us that these were ongoing medical conditions that would prevent him from testifying. What's troubling me is the trial court seemed to draw a lot of conclusions from Mr. O'Donnell's lack of appearance at trial that really somehow unfairly prejudiced the plaintiffs, and that was why they couldn't present any evidence in their case. When, in fact, the transcript from the hearing on that motion, just to set terms and conditions on the Rule 237 motion, counsel for the plaintiffs said, we decided we didn't need him. That's why we didn't take an evidence deposition. And the court ultimately ruled that we were entitled to take a videotaped evidence deposition, and due to circumstances surrounding prior costs that were unpaid by the plaintiff for travel to take their discovery depositions, the court even ordered that they were to prepay all those costs. But the long and the short of it is, if you look at the deposition testimony of William O'Donnell, he didn't support their case. He undermined their case. He handedly acknowledged having received the disclosure letter, having signed the consent, having returned the consent. So overall, if you look at this record, the same reasons that were raised in both of our motions to dismiss and in our response to the motion for summary judgment were the same reasons that there was a directed verdict. And under these facts and circumstances, counsel claiming that the objective standard is whether or not the plaintiffs can remember, I would submit that that is certainly not an objective standard. That is a subjective standard based upon these individual plaintiffs' ability to remember. There has to be an objective test. And the objective test would lead to an analysis that these people entered into an agreement. They signed a consent. The terms have been disclosed. It happened just a few years prior. And the letter that was sent to Mr. Dixon three weeks prior to the filing of the complaint asking generally for information regarding the operation of the farm over the last few years certainly was not a request for an accounting. It was not a request for specific documents. And nothing contained in that letter gave any notice that this was all coming down the pike. And here we are years later and still arguing about all this when, in fact, from the very beginning, from one month or two months after they filed their complaint, they had all the evidence that there ever was. There was no evidence presented at trial as to critical elements of each of their causes of action because it didn't exist. And that was our position from the beginning. Thank you. Counsel, you may proceed. Good morning. May it please the Court, my name is Megan Preston. I'm here on behalf of the Appellees Cross Appellants. Your Honors, the trial court correctly applied the standard for determining whether Rule 137 sanctions are appropriate in a case. And while I agree that the standard is a reasonably objective standard, that includes an analysis of the facts and circumstances that surround the case. In other words, the mental state and the age of the plaintiff is important in this case. And the trial court was correct to take that into account because you can't analyze an objective standard in a vacuum. You have to review everything that happened in the case. Your standard of review of the trial court's actions is an abuse of discretion. And we submit that except for entering some sanctions related to the original complaint, the trial court's decision was otherwise correct in this manner. You know, that disclosure letter from the LLC attorney really negates a lot of the early pleadings, doesn't it? Correct. It does. And that was obviously there from the very beginning then, correct? That was not in our possession, in my possession, prior to the time the original complaint was filed. And it's important in this case to make a distinction because the defendants have requested sanctions against both plaintiffs and their counsel, or either. It's important to draw a distinction between the requirements of plaintiffs, the requirements of their counsel, and what information is going back and forth between the two of them. What did you do when you got that information? What did I do when I got that information? Yeah. We asked for leave to amend our complaint and review our records and, of course, speak with our clients. Uh-huh. And made a determination based on that that it was appropriate to move forward with an amended pleading. I'm sorry, you're speaking to me. I'm sorry, Your Honor. You have to slow up. It was appropriate to move forward with an amended pleading based on the information provided by the defendant. And what was that amended pleading? The amended pleading was the amended complaint that alleged that the full terms of the transaction were not disclosed to the plaintiffs or consented to by the plaintiffs. Okay, and that was the amendment? Correct. I see. And what led you to make those allegations after looking at that documentation? The documentation that was then in our possession and conversations with the client. And so, objectively, if you looked at that documentation, you think that's supported? Correct. Can you explain why? Without going too much into communications with my client. The documentation, I said. Sure, the documentation. The letter from Mr. White, as defense counsel pointed out, or appellant's counsel pointed out, discloses that here are the terms that generally we may be using for the sale. The monetary term was disclosed and that they may be using a 20-year note. The consent signed by the clients only indicated consent to the amount of the sale. And they have disputed throughout the case that they were aware that a note was ultimately taken over a 30-year term. And what were the damages? The damages are that, of course, money now is worth more than money later. There's a 10-year time frame. These are elderly clients. They certainly wanted to get paid before the time they passed. And we also had equitable claims in here, including a claim for an accounting. Keep in mind that my clients had been residing in Florida for a very long time prior to the time the litigation arose and did not have access to all of the records in the possession of the Rowleys. The complaint you're referring to is the second amended complaint, but then that was voluntarily dismissed. The allegations relative to Rowley Farms were the difference between the amended complaint and the second amended complaint. I shouldn't say that. The additional claims in the second amended complaint over the first amended complaint were the claims against Rowley Farms. And those were ultimately voluntarily dismissed under Section 2-1009. Then you went to the third complaint. Correct. The second amended complaint, the third complaint. The other distinctions between the second amended complaint and the first amended complaint were to correct the pleading deficiencies that the trial court identified on the defendant's motion to dismiss. On the amended complaint, there was no finding by the trial court as to the veracity of any of the complaints. It was simply based upon whether the claims were sufficiently pled. So it is important to recognize that the court did not make any determinations based upon the merits of the case at the hearing on the amended complaint, which is why we filed a second amended complaint, which the court gave us leave to do. Okay, so basically, your second amended complaint, you got rid of the Rowley claims. The second amended complaint added the Rowley claims. The second amended added the Rowley claims. Yes, and then those were dismissed. So we received the document voluntarily dismissed. Voluntarily dismissed. In the face of all the evidence that said they had the money, they cashed it, and that sort of stuff. Correct. And the third amended complaint did not refer to the Rowley from the second amended complaint, but it referred to the Sutter's additional equitable claims. There was not an actual third amended complaint filed. The second amended complaint contained six counts. Two of those included Rowley claims. Correct. So those went away, and there were four remaining counts pending under the second amended complaint. Oh, I was right the first time. You've only got a second amended complaint. Yes, yes. I'm sorry. You didn't state that. I'm sorry. Yeah. So you basically took those counts away against Schraub. Yes, yes. That is correct. To give her feasible evidence that there was no raffle. Correct. When we reviewed that document with our client, that took some time. But you're going to conclude that on the remaining counts by reviewing the documents, that this may not be grounded in good faith, in fact, and law. I'm sorry. Say that again, Your Honor. Your whole argument, I mean, this whole argument here is, you know, you're certifying that it's grounded in good faith, in fact, and law. Right. So the whole issue before this court is, was there error by the trial court in ruling the way it did, and was there good faith, in fact, and law? Right. And so you're saying that what was left in the second amended complaint in those counts, you believe are grounded in good faith, in fact, and law. That is correct. That's your whole argument, and you've got to tell us why. Yeah. That is correct because the trial court correctly found that there were merits to the claims. It's not about whether we ultimately win or lose a trial, and we certainly did lose a trial. Now, that's for opposing counsel, because I'm trying to cut through this. Yeah, absolutely. Okay. Opposing counsel says the trial court erred in not using the right analysis in making that determination. Correct. And we disagree with that. Okay. So, first of all, are the claims related to the breach of fiduciary duty? Do you have, at law, a claim under that breach of fiduciary duty in an LLC? Right. You do? At law, is that a cognizable complaint? Against the persons in control of the LLC? Well, no. They're using control of your client and the other. Under an LLC, aren't they co-managers? There were claims that arose before the time that my client was technically a co-manager and after. So, prior to the death of James Rowley, he was the sole manager of the company, and those are the times at which we directed most of our allegations. For example, the court correctly found that when James – Was that in fact – Yes. – that he was manager? Yes. And Marilyn had nothing to do? No. It was solely James Rowley until his death. And the provisions of the operating agreement provided that after his death, Marilyn and Nancy Rowley would be co-managers. So, prior to the time that James died, this sale of the one parcel took place, and the court was correct in finding that when the manager of a company engages in a deal where he transfers property – when he purchases property for himself and for his spouse, that's self-dealing, and there have to be adequate disclosures to the other members of the company about the nature of the transaction. It's correct that the full nature of the transaction should be disclosed to the plaintiffs. There's no doubt that no one ever mentioned a 30-year note term to my clients. There's also no doubt that the consent form does not include a consent to a note at all. So, those issues were the issues that were probably before – So, what does the consent cover? It covers that the sale is going to happen and that it's going to be for a certain amount. Okay. So, those were the facts that were required to be tried by the judge, and upon hearing the evidence, he made a determination based on the facts and the law that the difference between a 20-year note and a 30-year note is not material to this transaction. It doesn't mean there are no circumstances under which it could be material. It simply means that under this transaction was not a material term of the agreement. So, the trial proceeded with two salient documents of consent and the disclosure? Generally, yes. And those were the two salient background facts? I would think so, Your Honor. So, the dispute was comparing the mortgage that exists with those salient disclosed facts and the difference? Sure. And that's what you want to trial? For the most part, yes, I would say that's correct. Okay. So, other claims included our claim for an accounting, and requests for accounting are very liberal. They include times when there is a breach of fiduciary duty, when there is fraud, or when there are complex accountings. And again, my clients were in their 80s, residing in Florida, wanted additional information about the income expenses, expenditures of the LLC, during the time that James and Nancy had had the documentation in their possession. My client testified at trial that she received income taxes, but did not otherwise receive regular supporting documents. While I recognize that demand is often required with an accounting, it is not always required in an accounting, including where there are facts demonstrating that it would have been futile to demand an accounting. And I believe that the evidence at trial supported that a request for an accounting would have been futile, given the nature of the relationship between the parties. The other claims were for fraud, and we've already discussed the Raleigh Farms claims. Again, there is a difference between what is required of the O'Donnells, the plaintiffs, and what is required of their counsel. I don't believe there is any evidence to demonstrate that my clients were acting in bad faith in pursuing this lawsuit. They certainly had memory deficiencies, had trouble locating documents, although the evidence did not demonstrate that they had pertinent evidence in their possession that they tendered to counsel in order that defendants subsequently based their motions to dismiss upon. The court correctly found that there was no evidence that their intent in this lawsuit was simply to harass the defendant. Those are important facts to analyze, particularly in analyzing whether sanctions are appropriate against O'Donnells. Their memories have to be taken into effect. You can't make a determination that they've acted with ill intent while not also analyzing their mental state. Intent requires an analysis of mental state. So applying an objective standard to the facts and circumstances of this case, I think it's clear that my clients did not act with any bad faith. Again, there's certainly a distinction between what the plaintiffs knew or were able to remember and the assistance they were able to provide counsel and information provided to counsel at each time the pleadings were amended. There are two issues here with analyzing whether sanctions against counsel are appropriate in this case. The first is whether the claims are based in law and fact, and I think I've already addressed those. The second is whether there was a failure to investigate the claims prior to the time the various pleadings were filed. Two minutes, please. Thank you. Again, each time the defendants produced documents that were relevant to our case, which we, as counsel indicated, we initially sent a letter to defendant's counsel stating that we'd like to investigate the ownership of the farm property, which included this parcel of property at issue. We didn't receive any response at all within 20 days, and that's when we filed our complaint. In response to our original complaint, that is when we received the documentation relating to the consent for the sale. Contrary to what defendant's counsel said at the beginning, there were not documents in possession of plaintiffs from the absolute beginning of this case. Documents were provided over the course of discovery. There were some delays in producing documents. So, as is often the case during discovery of a case, we amended our complaint to conform to the information that became available from the defendants when we received it. Certainly, it would have helped. Certainly, having certain documents had an effect on the veracity of various pleadings, and we certainly tried to conform our pleadings to those documentations. The facts and circumstances and the ability of plaintiffs to assist counsel in forming their pleadings is very relevant in this case. They resided in Florida, provided certain documents, discussed those documents with clients, and did what we could to investigate the claims. And I think based on the objective relief reasonable standard, under the facts and circumstances of the case, it's not appropriate to find that we failed to investigate those claims. It's not what? It's not appropriate to find that we failed to investigate those claims. Any questions before my minute is up? The trial judge made a finding with regard to the appropriateness, with regard to the first complaint. Yes, he did. And he found that... Do you object to that? We do. His logic was that it would have been appropriate for us to obtain a copy of the operating agreement prior to the time the complaint was formed, and he speculated that that would have led to the discovery of the letter from Mr. White and the consent. The issue there is that we did not know... That was the trial judge. That was the trial judge, correct. We were not aware that there was an operating agreement. Certainly, all LLCs do not have operating agreements, and I think that it's a bit of leap of logic that we then would have found the letter from Andrew White simply by having the operating agreement in our possession. But based upon his finding, he determined that sanctions were appropriate for the original complaint only. He analyzed the bills and records submitted by the defendants and determined that their records did not support the total amount they were seeking there and that there were deficiencies in their billing records, which is part of the reason he awarded the amount that he did. Those records, obviously, to the extent that defendants are now requesting all of their attorney's fees to be awarded, all of the billing records are an issue because they don't believe they support the request for the defendants' request for sanctions. In part, where they're requesting sanctions related to various claims, there's different defendants, and those records are not divided between defendants. When did the request for the accounting surface in the pleadings? Was it in the second amended complaint? I think it was in the original complaint, but I would have to look to see. I think that was an original claim. And that survived? I believe so, but I would have to look and make sure because I'm not certain on that. Did the trial court deny the request for accounting? It did. At trial? Yes. After the hearing? Yes. So the third go-around was what was left after the voluntary dismissal? Yes. Who would have borne the cost of an accounting? I don't think we ever got to that point. It probably would have been the LLC, which was owned by all of the parties. And how would that compare to the cost of an accounting versus the cost of their attorney's fees? I would assume lower. No, I would assume lower. Thank you. I mean the cost of the accounting would be lower. Thank you. I'd like to have a remotion on that. Please report. I'm Fred Dixon. I'm co-counsel with Ms. Francis. In rebuttal, I have to say that I'm as sympathetic to the plight of old people as anybody you can think of. Every white hair attests to that fact. However, to properly administer a case in a court of law, there have to be objective standards. People who are old are entitled to bring their case, and I don't dispute that fact at all. But the test is an objective test. And if counsel undertakes the defense of an older person, it only increases their obligation to find out the facts and put those facts into cause of action or theory of law. This case from the beginning has been a case where the facts that were pleaded didn't rise to the level of stating a cause of action in most cases for fraud, breach of fiduciary responsibility. There are a number of misimpressions that may have been created by counsel's argument, and I want to address those. She has stated that the white letter of December 11th, the copy of the memorandum approving the sale, were not in the possession of the plaintiffs. However, during the course of discovery, in response to a motion to produce those items along with the operating agreement for the LLC, which gave an option to the defendants to buy the property in question, was part of the production of the plaintiffs, and it was buried at about page 95 in a group exhibit that was in excess of 100 exhibits. It was more like 200 exhibits. These were presumably in their possession all along. And the plaintiffs had either hidden this from their own counsel or their own counsel hadn't seen it. Now, that makes the matter all the more egregious. The plaintiffs were how old? At the time, I believe that one of them was 83. I'm not sure how old Mr. O'Donnell was. Secondly, I deem it disingenuous to talk about the voluntary dismissal of the corporation. Now, for convenience, refer to corporation and LLC distinguished. That occurred after the discovery deposition of the plaintiff, William O'Donnell, had been taken, and it was clear from his testimony that he had contradicted all the allegations of the complaint and what his wife was saying. Moreover, his health may have been bad. He had a tremendous weight problem, but his recollection was clear. It's difficult for me to understand how this could have been brought. He had to have been in conversation between Mr. O'Donnell, as evidenced by his deposition, and the end result. The dismissal of the corporation only came after the defendants filed a motion for sanctions. It didn't come after the deposition, and it didn't come anywhere else. Essentially, this case has been a case where it's been in search of facts and law that would fit. One minute, please. The accounting rules that are set forth in the Limited Liability Act of Illinois are very liberal. You can go and see these any time you want. The records were at the home of the decedent, who prior to his death had been a manager. Currently, though, the plaintiff, Marilyn O'Donnell, is a manager, and she was from the time of her brother's death. That seems to be ignored. She wouldn't respond. She wouldn't cooperate. She just complained. I have any questions? Thank you. Thank you, counsel. Go ahead. Thank you. Just to briefly address one of the issues counsel just raised about documents being produced, the consent and letter being produced by the plaintiffs in discovery, that was after discovery was conducted after the complaint was amended. We had been tendered those documents by the defendants at that point, and, of course, we have to include them in our response to request to produce, because that affects what evidence can come in at trial. So that has no relation to whether or not my clients had those documents in their possession before the original or amended complaint were filed. Those were documents that we received in our office from defendants' counsel, so, of course, they were in our discovery responses. The crux is that, again, there is no evidence that plaintiffs' counsel failed to talk with their clients, failed to talk with anybody else, failed to review the records that were available to them prior to filing any of the pleadings in this case. That's all I have. Thank you, counsel. Thank you. The court will take this matter under advisement and will dispatch, and we'll take a short break for panel discussion. Thank you. Thank you all. This court is adjourned.